4:13-cv-04068-SLD    # 37    Page 1 of 17

10209-U0815
JLB

E-FILED
Monday, 20 October, 2014  05:23:22 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LOREN W. JASPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Law No.: 4:13 CV 04068 |
| | ) |
| JOE OLSON; DR. DAN WILLIAMS, DR. ADEYEMI FATOKI, | ) |
| | ) |
| Defendants. | ) |

**MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, ADEYEMI FATOKI, M.D., DAN WILLIAMS, P.A., and JOSEPH OLSON, by and through their attorneys HEYL, ROYSTER, VOELKER & ALLEN, filed pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1, as follows:

*Introduction*

This suit was filed by Mercer County Jail inmate Loren Jasper who claims that Dan Williams, P.A., Adeyemi Fatoki, M.D., and Jail Administrator Joseph Olson were deliberately indifferent to alleged dental needs.

Summary judgment should be granted in favor of P.A. Williams, Dr. Fatoki and Mr. Olson as a matter of law because the undisputed medical evidence demonstrates that Plaintiff did not suffer from a dental infection and was provided with all medically necessary care during his incarceration at the Mercer County Jail. Plaintiff's claim that he should have been provided with Tramadol for his dental pain since it was prescribed by his outside physician Julio Santiago, M.D., is undercut by Dr. Santiago's sworn statement that he did not prescribe Tramadol for dental

1

pain or for the time period at issue. The moving defendants are additionally entitled to qualified immunity.

## *Undisputed Material Facts*

1. At all times pertinent to the above-captioned matter, Correctional Healthcare Companies, Inc., ("CHC") was a private correctional healthcare company that was under contract to provide medical care at certain jails, including the Mercer County Jail. Dr. Fatoki and P.A. Williams were employed by CHC to provide care at the jail. Joseph Olson was the Chief of Corrections for the Mercer County Jail. He is not a physician. *See* Declaration of Adeyemi Fatoki, M.D., attached hereto as Exhibit A, paras. 2, 4; Declaration of Dan Williams, P.A., attached hereto as Exhibit B, paras. 2, 4; Declaration of Joseph Olson, attached hereto as Exhibit C, paras. 1, 3.

2. Plaintiff Loren Jasper was incarcerated at the Mercer County Jail on an aggravated criminal sexual abuse felony charge from 1/11/13 until 10/28/13, at which time he was transferred to the custody of the Rock Island County Jail for a separate aggravated criminal sexual abuse felony charge. He was incarcerated previously in Iowa for forgery and theft. *See* Exhibit A, para. 3; Exhibit 2, Bates Stamp Nos. HRVA 26, 28, 30; Exhibit B, para. 3; Exhibit C, para. 5.

3. The CHC-Jail contract provided that CHC was to provide dental screenings but not dental care. In the event dental care was medically necessary, the inmate was to be referred out to an external provider. Generally, if inmates at the jail complained of dental issues, they would be evaluated, given Orajel and/or Tylenol and/or Ibuprofen for pain and antibiotics if there is an infection. If antibiotics are ineffective in resolving an infection, Dr. Fatoki would refer

2

the inmate out to a dentist and/or oral surgeon. *See* Exhibit A, para. 5; Exhibit B, para. 5; Exhibit C, para. 4.

4. A Mercer County Jail Intake Acceptance Questionnaire states that Plaintiff did not have any known problems and did not require any prescription medications. *See* Exhibit A, para. 8; Exhibit 1, Bates Stamp No. Mercer 56; Exhibit B, para. 8.

5. An initial health assessment was performed by Carrie Melvin, L.P.N., with respect to Plaintiff on 1/15/13. While the oral screening was "poor," "no acute abnormalities [were] noted." Plaintiff had a history of heroin and pot use. Chronic diseases reported included bipolar disorder, glaucoma and COP. Plaintiff was seeing Julio Santiago, M.D., for out-patient mental health treatment. Current psychotropic medications included Buspar and Lexapro. Plaintiff reported that he was also prescribed Tramadol by Dr. Santiago. See Exhibit A, para. 9; Exhibit 1, Bates Stamp No. Mercer 88-89; Exhibit B, para. 9.

6. P.A. Williams saw Plaintiff on 1/28/13 for medication management at which time Plaintiff reported that Dr. Santiago prescribed Tramadol for him. The assessment was bipolar disorder and chronic pain. P.A. Williams ordered an optic consult for glaucoma and continued all of Plaintiff's medications, including Buspar and Citalopram. P.A. Williams also initially approved Tramadol, a controlled substance, until he could warrant objective reason for Tramadol. P.A. Williams withdrew Tramadol as a medication because it was not warranted based upon Plaintiff's clinical presentation and alternative pain medications were adequate, i.e., Ibuprofen with and without Tylenol. Plaintiff was informed by Nurse Melvin that the Tramadol was denied and Plaintiff was reported to be "ok with the denial." *See* Exhibit A, para. 10; Exhibit 1, Bates Stamp No. Mercer 90, 99, 101; Exhibit B, para. 10.

10209-U0815
JLB

7. Dr. Santiago states in his sworn declaration that he prescribed Tramadol for back pain –not for any dental condition. Dr. Santiago has no opinions concerning Plaintiff's condition or care during his incarceration at Mercer County Jail. *See* Declaration of Julio Santiago, M.D., attached hereto as Exhibit D.

8. P.A. Williams' 1/28/13 visit with Plaintiff was his only involvement in Plaintiff's care. *See* Exhibit A, para. 11; Exhibit B, para. 11.

9. An undated note by Nurse Melvin reflects that Plaintiff sought treatment for tooth pain on the upper right side but there was no infection. She applied Orabase to the area and gave Plaintiff Tylenol and Ibuprofen. *See* Exhibit A, para. 12; Exhibit 1, Bates Stamp No. Mercer 91; Exhibit B, para. 12.

10. Dr. Fatoki saw Plaintiff on 4/8/13. Plaintiff requested a referral to an oral surgeon for a toothache, but reported that clove oil -a home remedy for dental pain -was helping. Dr. Fatoki's exam revealed multiple decayed and missing teeth, but no infection. The assessment was tooth decay; problem is chronic. Because there was no infection, a referral to an oral surgeon was not medically necessary or warranted. *See* Exhibit A, para. 13; Exhibit 1, Bates Stamp No. Mercer 92; Exhibit B, para. 13.

11. The medication administration records reflect that Plaintiff frequently was offered and administered Tylenol, Clove Oil and Ibuprofen, among other medications, while at the Mercer County Jail; on occasion, he refused the pain medication. *See* Exhibit A, para. 14; Exhibit 1, Bates Stamp No. Mercer 30-31, 105-111; Exhibit B, para. 14.

12. Plaintiff was transferred to the custody of the Rock Island County Jail on 10/28/13. *See* Exhibit A, para. 15; Exhibit B, para. 15.

13. While at the Rock Island County Jail, Plaintiff complained that he was not being provided with his medications for bipolar disorder and glaucoma –noting he had been given these medications while at the Mercer County Jail –though he refused to see the medical staff. *See* Exhibit A, para. 16; Exhibit 1, Bates Stamp Nos. HRVA 58, 70-73, 78, 86-87, 90; Exhibit B, para. 16.

14. There is only one reference to Plaintiff's dental condition in Plaintiff's Rock Island County Jail records. On 4/13/14, Plaintiff complained that he asked for Tylenol for a toothache but did not receive it until the next morning. He was told to put in a request to see the doctor if he was having an issue with his teeth, but he did not do so. *See* Exhibit A, para. 17; Exhibit 1, Bates Stamp Nos. HRVA 78; Exhibit B, para. 17.

15. Neither Dr. Fatoki, P.A. Williams nor Jail Administrator Olson are aware of any complaints made by Plaintiff concerning his dental condition other than those identified above. *See* Exhibit A, para. 18; Exhibit B, para. 18.

16. It is Dr. Fatoki and P.A. Williams' expert opinion, based upon their review of Plaintiff's records and their medical education, training and experience, to a reasonable degree of medical certainty, that Plaintiff did not suffer from a dental infection during his incarceration at the Mercer County Jail. To Dr. Fatoki and P.A. Williams' knowledge, Plaintiff has not been diagnosed as having a dental infection since he was released from the jail and has not been prescribed a course of treatment different from that afforded to him at the Mercer County Jail. *See* Exhibit A, para. 19; Exhibit B, para. 19.

17. It is Dr. Fatoki and P.A. Williams' expert opinion, based upon their review of Plaintiff's records and their medical education, training and experience, to a reasonable degree

of medical certainty, that Plaintiff was timely provided with any and all medically necessary treatment. *See* Exhibit A, para. 20; Exhibit B, para. 20.

18. It is Dr. Fatoki and P.A. Williams' expert opinion, based upon their review of Plaintiff's records and their medical education, training and experience, to a reasonable degree of medical certainty, that there is no objective evidence of any permanent damage or substantial harm as a result of the alleged misconduct in this case. *See* Exhibit A, para. 21; Exhibit B, para. 21.

19. It is Dr. Fatoki and P.A. Williams' expert opinion, based upon their review of Plaintiff's records and their medical education, training and experience, to a reasonable degree of medical certainty, that, while Plaintiff was under his care, he was administered ample and appropriate medication and treatment for any complaints of pain or other dental complaints he might have had. Controlled substances such as Tramadol were not warranted or medically necessary in view of Plaintiff's clinical presentation and condition. *See* Exhibit A, para. 22; Exhibit B, para. 22.

20. It is Dr. Fatoki and P.A. Williams' expert opinion, based upon their review of Plaintiff's records and their medical education, training and experience, to a reasonable degree of medical certainty, that, at no time did the defendants refuse Plaintiff any medically necessary care or treatment; to the contrary, the defendants met the applicable standard of care regarding their treatment of Plaintiff, as outlined above. *See* Exhibit A, para. 23; Exhibit B, para. 23.

21. Mr. Olson's involvement with Plaintiff as it pertains to the allegations in the above-referenced lawsuit was limited to reviewing and responding to a letter by Plaintiff dated 4/3/13 and four grievances submitted by Plaintiff dated 5/6/13, 5/8/13, 9/17/13 and 9/20/13. *See* Exhibit C, para. 6; Exhibit 1, Mercer 1, 2, 3, 4, 20, 21.

10209-U0815
JLB

22. Plaintiff submitted a letter "to whom it may concern" dated 4/3/13 complaining that he was not able to get Tylenol during the night time hours (8 p.m. and 8 a.m.) for a toothache. Mr. Olson responded by telling Plaintiff to submit a medical request form to the nurse so they could discuss this issue. *See* Exhibit C, para. 7; Exhibit 1, Mercer 1.

23. Plaintiff submitted a grievance dated 5/6/13 saying that he had sent Mr. Olson letters and notes and that Mr. Olson was ignoring him. Mr. Olson responded by stating that the grievance dated 5/6/13 was the first grievance he received from him and that he would respond to any issues raised in a grievance. *See* Exhibit C, para. 8; Exhibit 1, Mercer 2.

24. Plaintiff submitted a grievance dated 5/8/13 complaining that correctional officers were passing out medications instead of nurses and that he was being denied dental care and pain medication. Mr. Olson responded by stating that it is lawful for correctional officers to pass out medications to inmates and that whether pain medications and a referral for off-site dental treatment are medically necessary are medical determinations that Mr. Olson is not qualified to make and must defer to Dr. Fatoki on. *See* Exhibit C, para. 9; Exhibit 1, Mercer 3.

25. Plaintiff submitted a grievance dated 9/17/13 stating that he saw the nurse for a toothache and was told he would have to wait until the next month to see Dr. Fatoki. Mr. Olson responded by instructing Plaintiff to submit a medical request form to the nurse again and she would call the doctor to get him started on medications for his claimed discomfort and infection. Plaintiff failed to submit a request form. He was transferred to the Rock Island County Jail on 10/28/13. *See* Exhibit C, para. 10; Exhibit 1, Mercer 20.

26. Plaintiff submitted a grievance dated 9/20/13 stating that he asked for Ibuprofen and Tylenol at 3:35 p.m. but was told he would have to wait until 8 p.m. By way of brief

background, medications are passed out at the jail at 8 a.m. and 8 p.m. daily. Mr. Olson responded by stating that the frequency within which medications are passed out are medical decisions for the nurse and doctor at the jail. *See* Exhibit C, para. 11; Exhibit 1, Mercer 21.

27. Mr. Olson has not received any complaints from Plaintiff concerning his dental condition since his grievance dated 9/20/13, nor has he had any personal involvement in his care for the same. *See* Exhibit C, para. 12.

28. Insofar as Mr. Olson is not a physician and had no reason to question the care provided to Plaintiff, it was reasonable for Mr. Olson to rely on the medical opinions of Dr. Fatoki and the care provided by the medical staff. *See* Exhibit C, paras. 13-16.

29. At no time were the defendants aware that a substantial risk of serious harm existed with respect to Plaintiff's condition, nor was he at such a risk. *See* Exhibit A, para. 24; Exhibit B, para. 24; Exhibit C, paras. 17-18.

***Standard of Review***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). If the factual context renders the claims asserted by the party opposing summary judgment implausible, the party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *McDonnell v. Cournia*, 990 F.2d 963, 967 (7th Cir. 1993).

Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.

8

*Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). Only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

It has repeatedly been recognized that "the validity of medical records and entries in the medical records cannot be disputed in the absence of any contrary evidence." *See, e.g., Moss v. Morman*, No. 99 C 3571, 2001 WL 1491183, at *4 (N.D.Ill. Nov.26, 2001) (Exhibit E); *Myers v. McAuley*, No. 02 C 1590, 2003 WL 22232830, at *2 (N.D.Ill. Sept. 16, 2003) (Exhibit E). In addition, an inmate's bald allegations, without more, are insufficient to overcome a motion for summary judgment. *Moss*, 2001 WL 1491183, at *4; *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Similarly, a mere scintilla of evidence in support of the plaintiff's position is not sufficient to create a genuine issue of material facts. *Anderson*, 477 U.S. at 252.

### Argument

<u>No Deliberate Indifference on the Part of Dr. Fatoki or P.A. Williams</u>

Summary judgment should be granted in favor of Dr. Fatoki and P.A. Williams because there is no evidence that they acted with deliberate indifference. Plaintiff has the burden of showing that: (1) the harm to him was objectively serious; and, (2) Dr. Fatoki and P.A. Williams were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they drew that inference. *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 297 (1991);

10209-U0815
JLB

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir.2000); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995) (repeated acts of medical malpractice are not sufficient).

Plaintiff is unable to satisfy this burden here. Specifically, when Plaintiff was taken into custody at the jail, and throughout his incarceration, Plaintiff's oral condition was poor but there were no acute conditions, i.e., infection, that warranted a visit to see an oral surgeon or treatment other than Tylenol, Ibuprofen, Orabase and/or clove oil. *See supra* Statement of Facts ("SOF"), paras. 4-5, 8-11, 16-20. Though Plaintiff claims that his primary care physician Dr. Santiago prescribed Tramadol for him, the medical defendants hold the expert opinion that such was not warranted and Dr. Santiago's sworn statement reflects that the Tramadol was not prescribed for Plaintiff's dental condition or for the time period that Plaintiff was in jail. SOF, paras. 5-7, 16-20.

In the Seventh Circuit, that an inmate was treated defeats a claim of deliberate indifference. *See, e.g., Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir. 1985); *Garvin v. Armstrong*, 236 F.3d 896 (7th Cir. 2001) (affirming summary judgment in favor of jail doctor; in reaching that decision, the court found it significant that the doctor's actions would contradict a finding of deliberate indifference, such as moving the inmate to the medical unit so he could retrieve his inhaler more quickly). Plaintiff was timely provided with any and all medically necessary treatment. Controlled substances such as Tramadol and a visit with an oral surgeon were not warranted or medically necessary. SOF, paras. 17-20. At no time were the defendants aware that a substantial risk of serious harm existed with respect to Plaintiff's condition, nor was he at such a risk. SOF, para. 29.

10209-U0815
JLB

Further, there is no objective evidence of any permanent damage or substantial harm as a result of the alleged conduct in this case. SOF, para. 18. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (stating that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed").

Even if this Court were to assume the truth of the allegations being asserted by Plaintiff, such, at best, would amount to medical negligence –not a constitutional violation –insofar as the constitution does not require that inmates receive unqualified access to healthcare. *See, e.g., Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir.2002); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Further, the failure to prescribe a stronger pain medication does not constitute deliberate indifference. *See, e.g., Fitzgerald v. Greer*, 324 F. App'x 510, 515 (7th Cir. 2009); *Norfleet v. Webster*, 439 F.3d 392 (2006); *Taylor v. Couture*, No. 08 C 4871, 2010 WL 4073790 (N.D. Ill., Oct. 12, 2010 (Exhibit E); *Robinson v. Godinez*, No. 08 C 5393, 2011 WL 386831 (N.D. Ill. Feb. 3, 2011) (Exhibit E). As such, summary judgment should be granted in favor of the defendants.

<u>No Deliberate Indifference on the Part of Olson</u>

Summary judgment should likewise be granted in favor of Mr. Olson because Plaintiff was provided with all of the medically necessary care that he required and there is no evidence that Mr. Olson acted with deliberate indifference.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A claim of deliberate

indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir.2002). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. The officials must know of and disregard an excessive risk to inmate health; indeed, they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Consequently, Plaintiff has the burden of showing that: (1) the harm to him was objectively serious; and, (2) Mr. Olson was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he drew that inference. Plaintiff is unable to satisfy this burden here.

Mr. Olson is the Chief of Corrections for the Mercer County Jail. He is not a physician. The medical staff provided dental screenings. Mr. Olson was not competent or in a position to second-guess the care being provided to Plaintiff. See SOF, paras. 1, 3. Mr. Olson's involvement with Plaintiff as it pertains to the allegations in the above-referenced lawsuit was limited to reviewing and responding to a letter by Plaintiff dated 4/3/13 and four grievances submitted by Plaintiff dated 5/6/13, 5/8/13, 9/17/13 and 9/20/13. SOF, para. 21. Plaintiff's written submissions complained that correctional officers were passing out his medications –which is appropriate and lawful, not being able to get Tylenol between the hours of 8 p.m. and 8 a.m., and his claim that he was being denied dental care and pain medication. Mr. Olson responded to each of

10209-U0815
JLB

Plaintiff's submissions by properly directing him to the sick call procedure and deferring to the medical judgment of the medical staff insofar as the undisputed evidence reflects that Plaintiff did not have a serious medical condition that required treatment other than what was provided to him. SOF, paras. 17-29.

If a prisoner is under the care of medical providers, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands and the official will not be found to be deliberately indifferent. *See, e.g., Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir.2010) (jail administrator did not act with deliberate indifference to state prisoner's serious medical condition of tooth pain and decay, which ultimately required a root canal, by failing to refer prisoner to a dentist for treatment where administrator consulted with the prison medical staff and responded to prisoner's complaints); *Greeno v. Daley*, 414 F.3d 645, 655-656 (7th Cir.2005) ("Greeno contends that Miller [corrections complaint appeals examiner] was deliberately indifferent to his medical needs because he failed to investigate the complaints or remedy the medical defendants' failure to provide appropriate treatment. Our review of the record, however, reveals that Miller reviewed Greeno's complaints and verified with the medical officials that Greeno was receiving treatment. We do not think Miller's failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference."); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (same and quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators,

physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."); *Hernandez v. Keane*, 341 F.3d 137, 148 (2d Cir.2003) (no deliberate indifference on part of grievance reviewer who delegated responsibility for investigating inmate's complaints about his medical needs to other prison staff); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993) (non-medical professionals not deliberately indifferent for failing to respond to inmate's complaints when prisoner is ostensibly under care of medical experts). Insofar as Plaintiff was under the care of Dr. Fatoki and P.A. Williams, amongst other medical staff members at the jail, Mr. Olson was justified in, and correct in, believing that Plaintiff was in capable hands and is entitled to judgment as a matter of law.

Moreover, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn*., 557 F.3d 628, 633 (8th Cir.2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir.2005). Here, there is no objective evidence of any permanent damage or substantial harm as a result of the alleged conduct in this case. SOF, para. 18. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (stating that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"). As such, summary judgment should be granted in favor of Mr. Olson.

Qualified Immunity

In the alternative, Dr. Fatoki, P.A. Williams and Mr. Olson are entitled to qualified immunity. "[G]overnmental actors performing discretionary functions enjoy qualified immunity

10209-U0815
JLB

and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir.2010) (quoting *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir.2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))). To assess whether a governmental actor is shielded from liability by qualified immunity, a court must consider whether a constitutional right was violated and, if so, whether the particular right was clearly established at the time of the alleged violation. *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). In its discretion, the Court may consider which of the two inquiries to address first. Id. (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). *See also Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995) (holding that a private physician, whose employer contracted with the state to provide medical services, was entitled to assert the defense of qualified immunity in a deliberate indifference suit; affirming the district court's entry of judgment as a matter of law on qualified immunity grounds); *Sherman v. Four County Counseling Center*, 987 F.2d 397, 405-06 (7th Cir. 1993) (same).

      There is no evidence here to create a genuine issue of material fact that Plaintiff's federal rights were violated. The undisputed medical evidence in this case establishes that Plaintiff was provided all the medically necessary care that his condition warranted –as articulated in detail above. Because there is no evidence that Plaintiff's constitutional rights were violated, Dr. Fatoki, P.A. Williams and Mr. Olson are entitled to qualified immunity and summary judgment should be entered in their favor as a matter of law.  *See Mitchel v. Buncich*, 2:11-CV-91-PRC, 2013 WL 275592, at *16 (N.D. Ind. Jan. 24, 2013) motion for relief from judgment denied, 2:11-CV-91-PRC,

10209-U0815
JLB

2013 WL 1385522 (N.D. Ind. Apr. 4, 2013) (Exhibit E) (granting judgment in favor of the jail administrator on qualified immunity grounds).

WHEREFORE, Defendants, ADEYEMI FATOKI, M.D., DAN WILLIAMS, P.A., and JOSEPH OLSON, respectfully request that this Court grant summary judgment in their favor and against Plaintiff since there is no dispute as to any material fact and they are entitled to judgment as a matter of law.

                                        ADEYEMI FATOKI, M.D., DAN WILLIAMS and
                                                          JOSEPH OLSON

                              BY:            s/ Jana L. Brady
                                      HEYL, ROYSTER, VOELKER & ALLEN
                                                Jana L. Brady
                                                ARDC #: 6281390

HEYL, ROYSTER, VOELKER & ALLEN
Second Floor, PNC Bank Building
120 West State Street - P.O. Box 1288
Rockford, Illinois 61105 1288
Telephone:    815.963.4454
Facsimile:     815.963.0399

10209-U0815
JLB

## PROOF OF SERVICE

I hereby certify that on the 20th day of October, 2014, I electronically filed the foregoing instrument, MOTION FOR SUMMARY JUDGMENT, with the Clerk of the Court using the CM/ECF system and that a file-stamped copy was sent to pro se plaintiff Loren W. Jasper, via Certified Mail by United States Postal Service in an envelope addressed to him at his address as disclosed by the pleadings of record herein, on the 21st day of October, 2014.

***Via Certified Mail***
Loren W. Jasper
24087
Rock Island County Jail
Inmate Mail/Parcels
1317 Third Ave
Rock Island, IL 61201
PRO SE

                                                  s/ Jana L. Brady
                                                  Jana L. Brady

25918512_1